# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| vs. ) | Case No. 17 C 2271 |
| ) | |
| WARREN BALLENTINE, ) | |
| ) | |
| Movant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Warren Ballentine was convicted in 2014 of mail fraud, wire fraud, financial institution fraud, and making false statements to financial institutions. He has moved under 28 U.S.C. § 2255 to set aside his conviction and sentence. Ballentine claims that he received ineffective assistance of counsel because, at some point after trial, one of his attorneys announced that he had been diagnosed with Alzheimer's disease. He also claims that the evidence at trial was insufficient to support a guilty verdict. For the reasons stated below, the Court denies Ballentine's motion.

## Background

In January 2013, Ballentine was charged in a six-count indictment with mail fraud, wire fraud, financial institution fraud, and making false statements to financial institutions, all based on allegations of involvement in a mortgage fraud scheme. The indictment alleged that Bobbie Brown and Wanda Rivera-Burton recruited borrowers to submit fraudulent loan applications in connection with the purchase of property. The

buyers falsely indicated in their applications that they intended to occupy the properties. The indictment alleged that Ballentine, an attorney, represented these buyers at the closings knowing that the loan documents contained misrepresentations.

A jury trial on the charges against Ballentine took place in October 2014. Ballentine was represented by attorneys Charles J. Ogletree, Jr. and Lewis Myers, Jr. The evidence at trial focused on the purchase of three properties: 1506 S. Spaulding Avenue, 4822 S. Summerhill Drive, and 912 W. 86th Place. The government's case relied primarily on testimony from Marilyn Claiborne, who fraudulently purchased the Spaulding property; Lynn Cox, who originated Claiborne's loan knowing her loan application contained false information; Wanda Rivera-Burton, the organizer of the scheme to purchase the Summerhill and 86th Place properties; and Dina Dunn, who purchased these two properties. Ogletree and Myers split up the cross-examinations of these and other witnesses. Ballentine was convicted on all counts on October 24, 2014. In July 2015, the Court sentenced Ballentine to one day imprisonment followed by three years of supervised release.

Ballentine then filed a notice of appeal. In December 2015, the Seventh Circuit appointed appellate counsel. Appellate counsel filed an *Anders* brief in June 2016 in which she concluded that any challenge to Ballentine's conviction based on the sufficiency of the evidence at trial would be frivolous. The Seventh Circuit granted Ballentine until July 15, 2016 to file a response to the brief. Ballentine did not file a response. On December 22, 2016, the court ruled that counsel had "properly conclude[d] that it would be frivolous to challenge the sufficiency of the evidence" based on the testimony at trial and dismissed the appeal. *United States v. Ballentine*, 673 F.

App'x 554, 556 (7th Cir. 2016).

In July 2016, Ogletree announced that he had been diagnosed with Alzheimer's disease.

## Discussion

In March 2017, Ballentine filed the current motion under 28 U.S.C. § 2255 to vacate, correct, or set aside his sentence. After the government filed its response in April 2017, Ballentine asked the Court to appoint counsel to help him file a reply. The Court deferred ruling on this motion until briefing was completed. *See* dkt. no. 9. Ballentine filed a *pro se* response in June 2017.

**A.     Motion to appoint counsel**

The Court denies Ballentine's motion to appoint counsel. As discussed below, the record is sufficiently developed for the Court to resolve Ballentine's ineffective assistance claim. And his argument based on sufficiency of the evidence is procedurally barred and therefore does not require the assistance of counsel. Because Ballentine's claims are straightforward, the Court declines to appoint counsel. *See Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992); *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007) ("[D]ue process does not require appointment of counsel for indigent prisoners pursuing . . . federal habeas relief.").

**B.     Motion to vacate sentence**

Ballentine brings this motion under 28 U.S.C. § 2255, which authorizes a court to vacate, set aside, or correct a sentence imposed in violation of the laws of the United States or otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief is appropriate "only for an error of law that is jurisdictional, constitutional, or constitutes a

fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 592, 594 (7th Cir. 2004). Ballentine argues that he is entitled to relief under section 2255 on two grounds. First, he contends that he received ineffective assistance of counsel in violation of the Sixth Amendment because Ogletree was suffering from Alzheimer's disease during the trial and, as a result, failed to adequately cross-examine the government's witnesses. Mot. to Re-Open Appeal and/or Grant a New Trial at 1–2. He also argues that the evidence at trial was insufficient to support his conviction. *Id.* at 2–3.

### 1. Ineffective assistance of counsel

"The Sixth Amendment's right to the effective assistance of counsel provides § 2255 relief when counsel's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and [ ] the defendant was prejudiced by the subpar representation." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012) (internal quotation marks omitted). There is a presumption that counsel's conduct falls within the range of reasonable professional assistance. *Id.* In limited circumstances, counsel's conduct can give rise to a *per se* violation of the Sixth Amendment right to counsel. This occurs when counsel is not present at all or at critical stages; fails completely to cross-examine or subject the opposing case to the adversarial process; has an actual conflict of interest; or fails to file a requested appeal. *Cole v. United States*, 162 F.3d 957, 958 (7th Cir. 1998) (citing *United States v. Cronic*, 466 U.S. 648, 658–61 (1984)). Otherwise, the defendant must affirmatively demonstrate counsel's objectively deficient performance and the resulting prejudice. *See United States ex rel. McCall v. O'Grady*, 908 F.2d 170, 172 (7th Cir. 1990) (where

4

*per se* rule does not apply, defendant must show that counsel's performance was adversely affected).

To the extent that Ballentine contends that Ogletree's Alzheimer's diagnosis gives rise to a *per se* violation of the Sixth Amendment, the Court disagrees. The Seventh Circuit has indicated that the *per se* rule should be applied "only when it will achieve the correct result in almost all cases." *Jackson v. United States*, No. 93-3782, 1994 WL 375427, *2 (7th Cir. July 18, 1994). In *Jackson*, the Seventh Circuit held that counsel's alleged drug use during trial did not constitute a *per se* violation because defendant failed to show that counsel's performance "was so deficient that he had constructively no counsel at all." *Id*. The same is true here. Ballentine has not established that Ogletree's representation was so deficient as to amount to no representation at all. Further, he has not offered any direct evidence that Ogletree was suffering from the effects of Alzheimer's disease during the trial in October 2014, and the Court is unwilling to make such an inference based on Ogletree's announcement of his diagnosis twenty-one months later. In his reply, Ballentine lists symptoms from the Mayo Clinic that he alleges Ogletree would have been suffering at the time of trial. Def.'s Resp. to the DOJ on the 2255 Mot. at 2–3. But "because of the nature of Alzheimer's disease and its varied manifestations in different individuals," this does not establish what effects the disease actually had on Ogletree's cognitive ability at the trial. *Dows v. Wood*, 211 F.3d 480, 485 (9th Cir. 2000). Thus Ogletree's Alzheimer's diagnosis does not give rise to a *per se* violation of Ballentine's Sixth Amendment right. Appellate courts in other circuits have similarly determined that an attorney's mental illness does not qualify as a *per se* violation. *See Dows*, 211 F.3d at 485 (finding that

counsel's Alzheimer's diagnosis was not a *per se* violation); *Burdine v. Johnson*, 262 F.3d 336, 395 (5th Cir. 2001) ("Prejudice has not been presumed for claims of denial of effective-assistance due to counsel's alleged impairment because of alcohol, drug use, or a mental condition."); *Bellamy v. Cogdell*, 974 F.2d 302, 308 (2d Cir. 1992) ("[G]iven the varying effects health problems can have on an individual's ability to function, claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland*.").

Ballentine also argues that Ogletree filed a motion to withdraw from the case "out of the blue" on the eve of trial, which caused Myers to also request to withdraw. Def.'s Resp. to the DOJ on the 2255 Mot. at 3. He contends that Ogletree "was aware that something was wrong and thus was trying to get out of the case" and that no "reasonable person suffering from a mental disease could be effective counsel at trial." *Id.* But Ballentine's counsel moved to withdraw from the case on the eve of trial because they contended that Ballentine refused to meet with them to prepare for trial. The Court held a hearing on the motion to withdraw, at which Ballentine admitted that he had not been answering phone calls from counsel. The Court ultimately denied the motion to withdraw and ordered Ballentine to stay in Chicago to help prepare his defense. There is no basis to believe that the motion to withdraw had anything to do with Ogletree's eventual Alzheimer's diagnosis.

For these reasons, to succeed on his ineffective assistance claim, Ballentine must demonstrate that Ogletree's performance was objectively deficient. Ballentine argues that Ogletree failed to adequately cross-examine "the only government witnesses who [the Court] said may have" demonstrated that he knew about the

6

mortgage fraud scheme. Mot. to Re-Open Appeal and/or Grant a New Trial at 2. But defense counsel split up the cross-examinations between two attorneys, with Ogletree questioning three witnesses and Myers questioning five. Myers was responsible for cross-examining a number of essential witnesses, including Marilyn Claiborne, who acted as the buyer for the Spaulding property and testified that Ballentine attended the closing and advised her to sign the owner occupancy affidavit even though he knew she was not planning to live on the property. The Court never indicated that only the witnesses cross-examined by Ogletree—Lynn Cox, Lakeisha Jakes, and Dina Dunn—connected Ballentine to the fraud.

More importantly, Ballentine has failed to show that Ogletree's cross-examinations of these witnesses were constitutionally deficient. To do so, Ballentine must explain "what [the witnesses'] responses to further cross-examination might have revealed [and] how those responses might have affected the result" at trial. *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995). But Ballentine does not offer any suggestions regarding what information the defense would have gained from more extensive questioning of these witnesses. Further, the Court disagrees with Ballentine's contention that during cross-examination "Ogletree appeared flustered and lost and in fact only asked one witness one question." Mot. to Re-Open Appeal and/or Grant a New Trial at 2. During Ogletree's cross-examination of Cox, who originated Claiborne's loan and admitted knowledge of the scheme, he questioned her repeatedly regarding her own false statements during the scheme. Cox admitted her involvement in the fraud and that she received substantial kickbacks.

Ogletree used the same tactic in questioning Dunn, who purchased the

7

properties on Summerhill Drive and 86th Place. He brought out that she had lied to a former employer and when making statements to investigators regarding this case. He also questioned her on Ballentine's involvement and brought out that she had never directly told Ballentine that she was not going to live in the properties she was purchasing.

To be sure, Myers's cross-examinations of the witnesses he questioned were more vigorous and extensive than Ogletree's. But the record reflects that Ogletree attacked the credibility of the witnesses in a reasonably effective way. "That the jury ultimately believed the cumulative testimony of multiple government witnesses is not for this Court to contradict." *Hardamon v. United States*, 319 F.3d 943, 950 (7th Cir. 2003). Although Ogletree's questioning of Jakes was considerably shorter than his examination of the other witnesses, Jakes was not a participant in the scheme and was used by the government only to establish the materiality of the fraudulent representations on the loan applications from the standpoint of the lender. Counsel is not ineffective where he pursues "a clearly defined, strategic approach" that the jury later does not credit. *United States v. Trevino*, 60 F.3d 333, 339 (7th Cir. 1995).

Finally, in response to the government's argument that he was not prejudiced by any deficiencies in Ogletree's performance, Ballentine lists ways in which he asserts he has been damaged. These include the loss of his career and income, the death of his mother based on his inability to pay for a life-saving procedure, damage to his reputation, and disruption of his bankruptcy petition. Def.'s Resp. to the DOJ on the 2255 Mot. at 3–4. Although these consequences of Ballentine's conviction are unfortunate to say the least, they do not establish that Ballentine was prejudiced in the

way *Strickland* requires—i.e., there is a reasonable possibility that the outcome of his trial would have been different if Ogletree had performed differently at trial.

In sum, Ballentine has failed to demonstrate that Ogletree's performance at trial constitutes ineffective assistance of counsel.

### 2. Sufficiency of the evidence

Ballentine also argues that the evidence at trial was insufficient to support a guilty verdict. He contends that there is no proof of his guilt because he did not meet or talk with the buyers other than at closing and he did not handle any of the paperwork. Mot. to Re-Open Appeal and/or Grant a New Trial at 2–3. Ballentine alleges that the Court stated at sentencing that it had heard no evidence that he knowingly participated in the scheme. *Id.* at 3.

Ballentine's characterization of the Court's statements at sentencing is incorrect. The Court expressly stated that the government had met the requisite standard for establishing Ballentine's knowledge of the fraud in connection with each of the three purchases underlying his convictions. *United States v. Ballentine*, No. 13 CR 88, dkt. no. 128 at 15:7–13. The government then asked to introduce evidence of *other* fraudulent purchases that had not been proven at trial for use in the Court's determination of the amount of loss and restitution. In response, the Court stated that the government had failed to adequately prove Ballentine's knowledge of the fraud on *these other* purchases. *See id.* at 5:21–5, 6:12–20, 9:13–19. This conclusion does not alter or undermine the Court's determination that Ballentine was aware of and participated in the fraud in connection with the purchases of property on Spaulding Avenue, Summerhill Drive, and 86th Place.

9

Further, Ballentine is barred from raising an argument based on the sufficiency of the evidence in his motion under section 2255. The law prohibits raising in a motion under section 2255 an issue that was "presented in a prior application." *White v. United States*, 371 F.3d 900, 901 (7th Cir. 2004) (citing 18 U.S.C. § 2244(b)(1)). The Seventh Circuit has indicated that the term "prior application" includes not only applications for collateral relief under section 2255, but also claims presented on direct appeal. *See White*, 371 F.3d at 902–03. Here, Ballentine effectively raised the issue of sufficiency of the evidence on direct appeal. Following his conviction, he filed an appeal with the Seventh Circuit and was appointed counsel. Counsel eventually filed in *Anders* brief, in which she concluded that there was no non-frivolous basis for appeal, and more specifically that Ballentine's sufficiency of the evidence argument was frivolous. The Seventh Circuit gave Ballentine time to respond, and he failed to do so. The court then ruled on the *Anders* motion, finding that appellate counsel had "properly conclude[d] that the evidence, viewed in the light most favorable to the government, would enable a rational jury to find each element of the charged offenses." *Ballentine*, 673 F. App'x at 556. In doing so, the court reviewed the testimony and evidence presented regarding each transaction and determined that a challenge based on the sufficiency of the evidence "would be frivolous." *Id.* The court granted counsel's motion to withdraw and dismissed Ballentine's appeal. *Id.* at 557. This determination is a binding adjudication that precludes Ballentine from raising the issue again in his section 2255 motion. *White*, 371 F.3d at 902–03.

## Conclusion

For the foregoing reasons, the Court denies Ballentine's motion to vacate under

28 U.S.C. § 2255 [dkt. no. 1] as well as his motion to appoint counsel [dkt. no. 6]. The Clerk is directed to enter judgment in favor of the United States. The Court issues a certificate of appealability (COA) with regard to the claim of ineffective assistance of counsel but declines to issue a COA with regard to the claim regarding sufficiency of the evidence.

                                                  _____
                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

Date: August 28, 2017